We'll next hear argument in Hamilton and Tessalon v. Elite in 60043. Please the court again. Paul Leeds, also representing the debtors, obviously, in this matter. Now we move on to the issue of plan confirmation, which was the third, I think, of three original appeals that came out of the process in the bankruptcy court. Effectively, there was a trial on the dischargeability of a large debt, the debt in favor of Elite, face value of the judgment about $2.2 million. Elite moved for an order assigning post-judgment interest at the state rate to that judgment. The bankruptcy court granted dischargeability, denied post-judgment interest. Those went up on appeal. But while the orders were in effect, the Sixth Amendment plan finally came on for confirmation during 2017, and that's this case. This was a form plan. That's one of the most important things I want to highlight to the court, is that Hamilton's intent here was to comply with whatever the requirements of the bankruptcy code were for the payment. His creditors, Ms. Tessalon, shared that intent to come in, meet the requirements, and, of course, that's the good faith requirement, which I'll talk about in a moment. I'm sure it will come up in the conversation. You're aware that there was a collection injunction added to it. So the local rule provides that you have a form plan, and if you're going to make any variations to it, as is frequently the case, you just identify those. And that's what my office did on behalf of the debtors. And we included a specific plan injunction because there was a history of a lot of sort of side litigation among the parties. We were suspected that Elite would take every action it could, and if it wasn't completely clear in the plan, even though we believe the automatic stay would apply and would continue until the discharge was entered, a specific injunction against any kind of attacks on property that Elite contended were somehow property of the debtors should be in there. And that was included. That injunction was very specifically and thoughtfully addressed, candidly, by Judge Latham in the plan, considering, I believe, the fifth amended plan. So it was the precursor. Some amendments were made to get to the sixth amended plan, including the one of the plan injunction. Judge Latham did a thoughtful balancing of the equities, just as he was required to do under the existing Cates law, Mercado, and Brotby. Was well aware of the judgment. Had, at that point, not assigned interest to the judgment, but, in fact, thought it would be a stable judgment and made a finding, in fact, when talking about that, that for these debtors to be able to reorganize, if 10% interest was accruing, that would be difficult for them to ever get out of this. But at the time that he entered, the confirmation order had considered all these things, and that's what's required, and there's nothing irrational about the judge's approach to this. Well, the BAP thought otherwise. The BAP did. The BAP, at that point, by the time we heard the confirmation appeal, had already heard the non-dischargeability appeal. And, frankly, it was substituting its own judgment for that of Judge Latham, and that's what's most concerning about this. Also looking at Mercado, right, and what's out there for this type of collection injunction, and there was nothing like it. There wasn't, but that's sort of the point, is that the fact finder has to make that judgment. The judge who sat over this case for three, three-and-a-half years, watched the non-dischargeability case play out, heard all the motions and had seen what had been going on in the courtroom for three-and-a-half years, made the decision. And that's the important thing here, is there was nothing irrational about Judge Latham's decision. In fact, the BAP even acknowledged that without that injunction or without something preventing a leak from coming in, this plan would be infeasible because they'd constantly be hitting the debtor's bank account when the debtors wouldn't be able to make their plan payments. What's the effect? You argue that holders of non-dischargeable claims are barred from collecting their claims until the end of the plan under the amendments instituted by BAP's EPA. What's the effect of the statutory change? Well, we believe that it effectively extends the automatic stay until discharge. I mean, that's really the import of it is that a debtor Right there, because I think your briefing says as much. I think it does, but surely that's a knowable fact, isn't it? I think you cited some articles where this seemed to be in doubt. Are you saying now, in answer to Judge Okuda's question, that this is in fact the case, that the automatic stay is extended, or are you saying that this is up in the air? It is extended, Your Honor, and I apologize. There's some lack of clarity in our brief because there is a line, and candidly, I think this is a leftover line from a former plan. I did not catch it when we went through. Could you just give us, forgive me for interrupting, but Judge Okuda's question is really important to me. So what's the authority for that, that the automatic stay extends through the plan, please? So it's the fact that the discharge for a debtor in Chapter 11 does not get entered until the last plan payments are made. I'm just asking for like a citation. Under Section 362C, the automatic stay stays in effect until a discharge is entered. Under former law, the discharge would have come in at the effective date of a Chapter 11 typically. It's the date of discharge that's changed pursuant to the amendment in answer to Judge Okuda's question. That is correct, Your Honor, and I'm sorry I didn't understand that. If, in fact, under 362, I think it's C-2, that the automatic stay stays in place until the time a discharge is granted, which would happen after the plan is completed, does that mean that the collection injunction is really redundant? It may be, Your Honor. However, at the time the plan was confirmed, we were concerned that Elite was planning things that we had no idea would be coming, and so we wanted to make it very expressly clear in the plan that this injunction was there. The injunction is actually less broad than the automatic stay. It's peculiar because you fought hard to get this. I think it's your Fifth Amendment plan was denied for failure to satisfy this. It was, Your Honor. And your briefing here argues you didn't really need it anyway for the reasons Judge Okuda just mentioned, that it was redundant, so I'm at a bit of a loss here. I'm not sure we didn't need it, Your Honor, and, again, a lot of things had happened during the course of litigation between the parties. There were allegations about alter ego ownership of HCC, for example. We wanted to make it as clear as possible that there would be a prohibition against hitting HCC's accounts because that would, of course, defund the plan because all of the debtor's money was coming from his earnings from HCC at the time. So regardless of whether it's redundant or not, there's certainly nothing that stops a debtor from having belts and suspenders on these sorts of things, but is it your position that we should uphold the bankruptcy court or reverse the BAP based on the statutory language that would preclude Elite, in any event, to enforce its judgment during the pendency of the plan? I think it's what justifies the law allowing the injunction, Your Honor. So I think the legal solution, so to speak, is that this injunction is consistent with the law because it's consistent with the automatic stay. It may be redundant, but that's not a reason not to have it, but the factual and legal predicates were done correctly at the bankruptcy court and there was no error, so to speak, because this court is obviously reviewing directly what the bankruptcy court did. So in terms of other issues, that's about half the time that we had, and I don't know if there were any of particular importance. I would like you to turn to the feasibility question. So under 1129.11, it can't be confirmed, the plan can't be confirmed, unless the court finds that it's not likely to be followed by the liquidation or the need for further financial reorganization of the debtor, and the Bankruptcy Appellate Panel BAP was concerned about that. And I had trouble understanding what that means when the debtor in this case is an individual who we assume cannot be liquidated or reorganized in the way that the statute contemplates. So what does this mean and why is it your position that the BAP was wrong on its feasibility analysis? It's our position that the cases in the Ninth Circuit and virtually every other circuit that consider individual cases, they focus, when you're talking about feasibility, they read that more or less on its face value, that is it possible to do what the plan calls for, and that's what the cases we've cited stand for. Can the debtor make the effective date payments and can the debtor make the payments during the planned period? And that was clearly feasible. There was evidentiary support for it before the bankruptcy judge That's what BAP seemed to be worried about. Forgive me for interrupting. Your briefing makes this point repeatedly, that it was feasible because the debtor could make the payments. I understand that point. But what bothered the BAP was that there wasn't a showing that at the end of the day that the debtor would be back up on his feet, right? And in a position to pay this debt. And they seem to be, they wove that into the lack of good faith argument as well, saying that just delaying this thing did that. But the debtor did exactly what a debtor should do under these circumstances. It has a debt it can't pay. It comes in and meets the bankruptcy code requirements, gives a lead a secured claim of about $300,000. In fact, during the term of the plan, a lead will be paid about $644,000 over the term of the plan, including both the secured claim. And its debt will grow. And its debt will grow in light of the interest, it appears. But this is an unfathomable debt. Most people will never see this kind of money during their lifetime, and the fact is that this debtor did not have the resources to pay that debt immediately. So the debtor goes into the plan. Doesn't have the resources to pay it ever. Probably not, Your Honor. Your definition of feasible is simply doing what the plan calls for, even if the plan doesn't call for any realistic payment on the debt. Well, there is substantial payment, Your Honor. I mean, there's a commitment to pay over time the secured debt that we never fought on anything about interest rate or the terms of the secured claim. A lead accepted that. They took what we believe was a blocking position. They're going to do anything they can to prevent Hamilton from reorganizing. The rights of a non-dischargeable creditor will be there. Their remedy is that when all other creditors are paid, whatever pro rata percent they're going to get, and every other creditor other than these two voted for this plan, those creditors will be paid. The debtor gets the discharge. Then the lead has its remedy. It will be enforced under California enforcement of judgments law. If Hamilton has wages, they can take 25% of his wages, things like that. So Hamilton, because the debt to a lead is non-dischargeable, Hamilton is on the hook for the rest of his life, absent some change in the law or settlement. Is that right? As a practical matter, that's correct, Your Honor. For me, there's an elephant in the room, and I want to just give you a fair chance to respond to it. It isn't just an allegation that Mr. Hamilton, I'm going to use this as my word, stole intellectual property and client lists and employees and is in competition with a lead. That's my perhaps unfair characterization, but it's a shorthand way of saying what I understand sort of the back story to be, and I'm going to give you a chance to respond. But it's not just an allegation. There was a state court trial, and there's a judgment, and it includes a punitive damage award, which I take seriously. Yes, Your Honor. So given that background, which I'm happy to have you correct, but that's my understanding, there's this bankruptcy proceeding that's been set up, and arguably, I mean, I think Elite would say is that Mr. Hamilton is using this as a force field to keep them at bay for five years while he can compete against them. That's perhaps a very blunt characterization, but we are going to talk about good faith here. So how does that factor in? I just want to give you a chance to respond because it bothers me greatly. There is no doubt there is a judgment for a bad thing that happened. Mr. Hamilton left the employment. Did it just happen? Oh, and I don't mean to minimize it. There is a jury verdict that there was interference of contract and misappropriation of trade secrets. That comprises about $500,000 of the verdict. The balance of it were duties of loyalty and fiduciary duty allegations because of his role as an officer of the corporation that he left. Obviously, the underlying facts in that were hotly disputed, but there was a jury verdict, and a debtor has to make a decision. Do you go on appeal and fight factual findings if you have an extraordinarily high level of deference at the court of appeal, or do you just deal with it in bankruptcy? Go in and let the thing play out, and that's what this debtor did. He came in and said, whatever it's going to be, it's going to be. We're going to let a bankruptcy court decide what the non-dischargeable component is. The judge did the full amount. Only $160,000 is to Ms. Teslin, and they were prepared to deal with that. But there was another factor here that's very important to the underlying plan, and that is at the same time we went into this Chapter 11, there was an operating agreement with a company called SUMA. SUMA was the vehicle of the problem, the bad things that happened. SUMA's operating agreement included a non-compete for Mr. Hamilton. Mr. Hamilton can never make this kind of money if he is subject to a non-compete. There is no other field that he can make the kind of money he will need to repay creditors back. So we went into the Chapter 11. I would have much preferred this to be a Chapter 7, believe me. But we went into the 11 with the express purpose of rejecting the SUMA operating agreement so that he could make money to repay claims. And there was substantial litigation. SUMA was fighting with him, also a competitor. They had fired him. This is an industry that when people start making money, they begin stabbing each other in the back. And it seems to be a fact of it when a business makes a lot of money, and that's what happened to Mr. Hamilton there. He had to move on. He had to repay a lead, and he knew that. So he went into the Chapter 11 to reject the operating agreement to make the money to pay this back. There's no dispute, and other than the legal standards, the judge found that this was a knowing case. That has to do with the dischargeability appeal. But the judge found no intent to harm a lead, but there was certainly enough knowledge that it fell into the non-dischargeable category, and we are trying to deal with that. What should I do with this in terms of your ñ I appreciate your explanation, but does this play a role in the good faith analysis? I think it does, Your Honor. Good faith, really, if you look at the statute, says compliance with the bankruptcy code. That's what it says. Have you complied with the requirements of the bankruptcy code? Elite poo-poos that in their argument and says, no, it's got to be more than that. Well, the fact is when you've got an unpayable debt and you go in to pay what the bankruptcy code requires, it's really all you can do under those circumstances. I have 15 seconds I'd like to reserve. Thank you. May it please the Court. Once again, Gerald Sims on behalf of the appellees. The standard that counsel is asserting for feasibility that the debtor has the ability to pay, that's the standard in a Chapter 13 case. It's not the standard in a Chapter 11 case. The standard in Chapter 11 cases, as you've recognized, is there going to be a need for further liquidation or reorganization? Mr. Hamilton obviously can't be liquidated, and it's not clear what it means by an individual being reorganized. So here we have a Chapter 11 case involving an individual, which probably was not contemplated by Congress in enacting that. And so what does feasibility mean for an individual? Well, Your Honor, I would disagree with your comment as to whether an individual can be liquidated. We'll back up, because Chapter 7 of the bankruptcy code is the liquidation chapter, and individuals go into Chapter 7 liquidations every day of the week. So I think we have to view liquidation not in terms of an end to the debtor, but in Chapter 7, an individual is liquidated by filing a petition or having their case converted to Chapter 7. At that point in time, a trustee is appointed. The trustee collects all of the assets that the debtor has, all property of the estate. The debtor is entitled to keep some assets through exemptions that are allowed under either federal or state law. Those assets come out of the estate. The debtor uses those assets for the fresh start, and then the trustee liquidates everything else and pays secured creditors if there were proceeds from collateral that those creditors are entitled to. And everything else, after they pay the expenses of the bankruptcy, everything else is in shared pro rata among all the unsecured creditors. So if you win on your point here, are they going to go into Chapter 7? Is that what you're saying, or what's likely to happen? Well, in fact, Your Honor, we would submit that the BAP decision should be affirmed, and this should be remanded to the Bankruptcy Court with directions to either dismiss the case or to convert it to a Chapter 7 liquidation. Okay. And then what would change? Oh, I'm sorry. Go ahead. Maybe it's the same question, so now we're trying to cut to the reality. They say, oh, it's fine, you can collect after five years. If you win, what are you going to actually be able to collect now that you wouldn't be able to collect under their theory? Okay. Counsel mentioned that absent a bankruptcy stay, the elite would be able to collect from the wages that Mr. Hamilton has. He's making roughly we'd be able to do that right now. He's making about $200,000 a year. Twenty-five percent of that is $50,000 a year. So we would get that. And over the term of the plan, that's $250,000. I'm sorry, over five years, that's $250,000. The plan is a five-year term. What do we get on our unsecured claim? $124,000. We would also, because we have a lien on the real property, we would simply be able to foreclose on that lien, and we would get the real property. So we would be far better off in a Chapter 7 case or in a dismissal. And the result would be the same. And we might get a few dollars out of a Chapter 7 liquidation. Not likely, but it's possible, I guess. But once the case is over, either if it's dismissed, we can immediately go pursue our remedies. If it's a Chapter 7 liquidation, we would have the ability to pursue any assets that are not property or estate. And once the Chapter 7 is in place, Mr. Hamilton's earnings are not property or estate. So we'd immediately be able to go after that. So liquidation here is an option. And, frankly, liquidation is what this – if they wanted to get a fresh start to the extent they can, this is how you do it. This is how you do it. This is how you wipe out everything that's dischargeable, and now you're left with the one very large non-dischargeable judgment, and you have to deal with it. And what this plan does is allows the debtor to not deal with it. And to say that this case is in good faith because the Bankruptcy Code allows you to propose a plan with payments over time, that really misses the mark. And it doesn't address the case law, which talks about the need to examine the totality of the circumstances. It doesn't address this Court's decision in Marsh, where a bankruptcy was filed to prevent a large judgment from being collected. The case is different because in Marsh there was an ability to pay, but the reading from Marsh is delay is not a proper purpose to get into bankruptcy. So opposing counsel argues that the automatic stay would prevent – under a Chapter 11 plan, the automatic stay would prevent enforcement until the plan was completed. Do you disagree with that reading of the statute? Yes, Your Honor. I think that 362C1 terminates the stay as to property once the plan is confirmed. That's what the order confirming this plan says. It vests all the property back in the debtor. So I think, again, we have some selective reading going on that isn't – it doesn't hit the full measure of what 362C does. There's no stay, and this is the first we're hearing of it. It's clear that they've made statements throughout that even though the stay is gone, we're going to have this collection injunction. I mean, that's throughout. So this is a brand-new argument, first time, and it shouldn't be considered, and I think it's wrong in any event. So they argue that the stay of any other act, which would include enforcement of a judgment, continues until the earliest and then dropping down to if the case is a case under Chapter 11, the time of discharge is granted or denied. So that doesn't apply to this? I don't think it would apply to this because the stay as to property is terminated under C1. Okay. It says an act against property of the estate under Subsection A, and then it says any other act under Subsection A. So you're saying this is an act against the property? So you don't have a lien on the property, right? We have a lien. You're an unsecured creditor. We wear both hats. Yeah, we have the smaller portion of our – So to the extent that elitist unsecured creditor, in the scenario that you were drawing out in response to Judge Boggs' question about what would happen in a Chapter 7, as an unsecured creditor you would be treated on a par with other unsecured creditors, so any money that became available would be pro rata among unsecured creditors. Is that correct? Absolutely, Your Honor. If after everything was done the trustee in the Chapter 7 had $100,000 to distribute to unsecured creditors, we wouldn't get any bigger share. It would just simply be pro rata among all unsecured creditors. The fact that we have a non-dischargeable claim would not come into the equation at all. Okay. So I think getting back to just our bad faith argument, Your Honor, this case affects an eight-and-a-half year stay of a judgment by the state court where punitive damages were awarded, and during that time we'll get some payments on the secured portion, but on the unsecured portion we won't get enough to cover even a year's interest. The new value. The counsel keeps saying that these agreements were post-petition, that the operating agreement with the indemnity was post-petition. The operating agreement states it's effective April 2, 2014. The bankruptcy was filed April 24. So we can't believe what their documents say? The employment agreement, initial employment agreement, same thing. The addendum came later. But at the outset, these indemnity agreements were there. Now, counsel made a comment that Hamilton went into bankruptcy so he could collect his assets and then pay creditors appropriately. But he didn't ask for HCC to pony up on that indemnity agreement. There's nothing there that says, okay, pursuant to the indemnity agreement, HCC will pay the judgment in full. We'll pay $500,000 a year until it's paid in full. We'll pay $10,000 a year until it's paid in full. Nothing. Nothing. So that's not good faith. They go into bankruptcy, have a plan that extends out this non-dischargeable judgment for years and years and years, not even paying anything even close to the interest on it, resulting in a claim that is far larger at the end of the plan than it was when the bankruptcy was filed. That is not a reorganization purpose. So the fact that you can check off boxes here and say, well, the code allows you to do this and that's what we're doing, that doesn't answer the question. And I think one of the cases that I think really hits that is Dollar Associates. The court said, look, you've got the party that has the most debt here. You're trying to do something. They don't like it. You've got to come to terms with it. You've got to deal with this creditor. And here, Chapter 11 is supposed to be a negotiated process, and it's not supposed to be a take-it-or-leave-it. And this has been a take-it-or-leave-it. Well, it is sort of a take-it-or-leave-it, right? Well, Your Honor, again, in the good faith issue, we don't know what HCC is worth. As counsel said, there's a lot of money to be paid. This is all evidence that should be before the bankruptcy court, right? So this isn't for us to consider questions of credibility or the amount of funds that HCC has. We're just looking at whether the plan didn't meet the requirements. Fair enough, Your Honor. I think for purposes of this hearing, the import is that we weren't allowed to complete discovery on HCC to determine what it was all worth. Counsel, this struck me, to be frank, as one of your weakest arguments. What discovery were you denied? Well, we were going to be—I'm going to back up just a second to get your— we had this process in place where there were a series of informal reviews of the plan. And the idea is admirable to try to keep the costs down. Let's see—the judge was trying to see where we could fix the plan so that it might be confirmable without incurring all the costs that might be associated with the various discoveries. We got to the point where we needed to take the discovery of— well, we took the discovery of Mrs. Hamilton. Yes, Diana Hamilton. Diana Hamilton. Yes. And she knew nothing about the company. Yes, but you didn't prove up alter ego. I understand, Your Honor. So what discovery were you denied, sir? Our next on our list was the accountant, Your Honor. We were going to go through the books and records. When did you make that request? That was made— Vis-a-vis— Sometime, I think just—I could be wrong. I think it was sometime just after the fifth amended plan was denied confirmation. And the court, at that point in time, said, yeah, this is fishy. This whole arrangement is fishy, and maybe we should look into it. And then there was a period where he said, well, let's come back and we'll see if you're going to do discovery. And at that point, he had said, well, no, you don't need it. So, Your Honor, my time's almost up. Are there any questions? Apparently not. Thank you, Your Honor. We would just ask that the—we think the BAP decision was proper. It was fulsome. It hit the issues. It should be affirmed, and this case should be sent back to be converted to a Chapter 7 or dismissed. Thank you. My 34, 17 seconds. I'd like to just reply to the issue of conversion. Mr. Sims articulated fully what elite's interests were in the case, but ignored the rest of the estate. The standards for a conversion or dismissal are what's in the best interest of the estate, not one individual creditor, there's no doubt. They'd love to go to town and snap bank accounts and do everything they could. Second key point is the court may not be lost on the court, obviously. 362 is broader than 362. It just acts against property. It's debts against the debtor, and that's why the—I'm sorry, the termination of the stay is not affected simply by the release of secured property. Thank you. Thank both sides for their argument. The case of Hamilton and Teslin v. Elite, 18-60043, is submitted.
judges: Boggs, Ikuta, Christen